# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RANDALL EDWARD                                    CIVIL ACTION
ALBIN

VERSUS                                            NO. 12-649-BAJ-RLB

COMMISSIONER OF
SOCIAL SECURITY

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1)(C), you have **14 days** from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 31, 2014.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RANDALL EDWARD                                    CIVIL ACTION
ALBIN

VERSUS                                            NO. 12-649-BAJ-RLB

COMMISSIONER OF
SOCIAL SECURITY

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, Randall Edward Albin ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits "under Title II and Part A of Title XVIII of the Social Security Act." (Tr. 90).[1]  For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

## I.    PROCEDURAL HISTORY

On May 10, 2010 Plaintiff filed applications for disability insurance benefits (Tr. 90-93) originally alleging a disability onset date of April 26, 2010 (Tr. 42, 90, 122), which was later amended to January 31, 2010 (Tr. 12, 26).  Plaintiff's application was initially denied (Tr. 50-54)

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])".  Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

on July 2, 2010 because the Commissioner found Plaintiff was not disabled as of as of April 26, 2010 based on his "deteriorated disc in back, fused vertebrae, numbness on left leg, heart condition, high blood pressure, and high cholesterol." (Tr. 51). Plaintiff then filed a timely request for a hearing (Tr. 57-58) before an Administrative Law Judge ("ALJ") on August 16, 2010.

The hearing was held on April 18, 2011; Plaintiff, represented by counsel, appeared and testified. (Tr. 21-41). A vocational expert (VE), Thomas Mungall, also testified at the hearing. (Tr. 38-40). The Commissioner rendered an unfavorable decision (Tr. 10-16), through the Administrative Law Judge (ALJ), on June 15, 2011 (Tr. 7-9), finding Plaintiff had not been under a disability from the alleged onset date of January 31, 2010 through the date of the decision. Plaintiff's request for review was denied by the Appeals Council on August 9, 2012. (Tr. 1-3). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

    If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.    ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, she first found Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity from his amended alleged onset date of

January 31, 2010. (Tr. 12).  At step two, the ALJ determined Plaintiff's spinal stenosis with left

foot drop were severe impairments (Tr. 12), but found his "cardiac symptoms, diabetes mellitus,

and hypertension" were not (Tr. 13).  The ALJ concluded Plaintiff did not meet any of the "listed

impairments" contained in the Regulations at step three. (Tr. 13).  After summarizing the

evidence (Tr. 13-16), the ALJ found Plaintiff had the residual functional capacity to perform the

full range of sedentary work (Tr. 13).[2]  At the fourth step, Plaintiff was found capable of

performing his past relevant work as a union business manager. (Tr. 16).  Ultimately, the ALJ

determined Plaintiff had "not been under a disability . . . from April 26, 2010,[3] through the date

of this decision." (Tr. 16).

## IV.   ASSIGNMENTS OF ERROR

Plaintiff contends the ALJ's decision is erroneous because he has the following

impairments which are disabling under the Act: "severe degenerative disc disease, severe

spinal/lumbar stenosis, lumbar radiculopathy, chronic back pain and leg pain, severe left foot

drop, hypertension, hyperlipidemia, aortic valve disorder (AS/AI), and

cardiomegaly/cardiomyopathy." (R. Doc. 10 at 2).  In support of this contention, Plaintiff assigns

two errors. (R. Doc. 10 at 7).  First, the "ALJ failed to apply the proper legal standard when

determining the credibility of the Plaintiff." (R. Doc. 10 at 9-11).  Second, the "ALJ did not

---

[2] The Regulations explain that sedentary work:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

[3] The ALJ incorrectly cited Plaintiff's original onset date of April 26, 2010 (Tr. 122), as opposed to January 31, 2010 — his amended onset date (Tr. 12, 26).  Elsewhere in the decision, however, the ALJ acknowledges that the onset date was amended. (Tr. 10, 12).

apply the correct legal standard when assessing Plaintiff's RFC and the finding is not supported by substantial evidence." (R. Doc. 12-14).

## V.    DISCUSSION

### A.    Credibility

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. *See* 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide a non-exclusive list of factors that the ALJ must consider. *See* 20 C.F.R. § 404.1529(c) (2011).[4]  Nevertheless, the Fifth Circuit has held that the ALJ is not required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his or her reasons for rejecting a claimant's subjective complaints only "when the evidence clearly favors the claimant." *Falco*, 27 F.3d at 163.

Ultimately, the mere existence of pain is not an automatic ground for disability, and the claimant's subjective evidence of pain does "not take precedence over conflicting medical evidence." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  Likewise, an individual's statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be

---

[4] These factors include:

| | |
|---|---|
| (i) | Your daily activities; |
| (ii) | The location, duration, frequency, and intensity of your pain or other symptoms; |
| (iii) | Precipitating and aggravating factors; |
| (iv) | The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; |
| (v) | Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; |
| (vi) | Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and |
| (vii) | Other factors concerning your functional limitations and restrictions due to pain or other symptoms. |

20 C.F.R. § 404.1529(c)(3).

expected to produce the pain or other symptoms alleged. *Harper*, 887 F.2d at 96 (quoting 42 U.S.C. § 423(d)(5)(A)).

According to Plaintiff, the ALJ's credibility determination is a mere "conclusory statement;" it insufficiently fails to provide "specific reasons" or follow the two-step analysis required by the Administration. (R. Doc. 10 at 9) (citing SSR 96-7P, 1996 WL 374186, at *1-2 (July 2, 1996)). Ultimately, Plaintiff urges that because his alleged symptoms and pain "*are* substantiated by the objective medical evidence . . . the ALJ *must* accept them.*" (R. Doc. 10 at 11).

The Administration's Regulations and Rulings require the ALJ to follow a two step-process and to provide specific reasons for credibility findings. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P, 1996 WL 374186, at *2; *see also* 20 C.F.R. § 404.1529. If so, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 97-7P, 1996 WL 374186, at *2. If the alleged degree of pain, symptoms and limitations is "not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 97-7P, 1996 WL 374186, at *2.

The Court has reviewed the ALJ's decision along with the record and finds Plaintiff's allegations of error inconsistent with both. First, the ALJ clearly followed the two-step analysis in assessing Plaintiff's credibility. The ALJ begins her credibility assessment by explaining the two-step process required by the Regulations. (Tr. 13-14). The analysis proceeds in two parts

consistent with the Regulations, throughout which the ALJ provides a detailed review of Plaintiff's statements and the objective medical evidence. At the first step, the ALJ discussed Plaintiff's diagnoses and medical evidence and found his "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 14-15). At step two, the ALJ discusses Plaintiff's allegations and compared them with the objective medical evidence. (Tr. 14-15). Because of the inconsistencies between the degree of limitations alleged and the objective medical evidence, the ALJ found: Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 14).

There is no support for Plaintiff's argument that the ALJ failed to follow the required analysis. And the "conclusory" credibility finding quoted in Plaintiff's Memorandum (R. Doc. 10 at 9) is simply the opening sentence of the beginning paragraph of step two in the analysis (Tr. 14). The ALJ discussed the medical evidence in the record and explained the evidence she relied on in assessing Plaintiff's credibility. Therefore, there is no merit to Plaintiff's arguments that the ALJ failed to follow the Regulations or provide specific reasons for her credibility finding.

Plaintiff's final credibility argument is that the medical evidence "substantiat[ing]" Plaintiff's alleged symptoms required the ALJ to fully accept them. (R. Doc. 10 at 11). The ALJ found that the medical evidence indicated impairments consistent with Plaintiff's alleged symptoms; however, those symptoms were not as intense, persistent or limiting as Plaintiff claimed. (Tr. 14). In support, the ALJ referenced Dr. John E. McClachlan's medical records, which explained x-rays, echocardiograms and examinations showed Plaintiff's cardiovascular impairments were "asymptomatic" and Plaintiff reported being more active without difficulty.

8

(Tr. 12-13, 305-06, 309-12).  Other records indicated that after his spinal fusion surgery Plaintiff felt "great," "wonderful," "very well" (Tr. 358-59, 366, 369, 372), was active and tolerated physical therapy without difficulty (Tr. 317, 319), regularly experienced little to no pain (Tr. 346) and was cleared to duck and deer hunt at his request (Tr. 358-59, 372).  The ALJ acknowledged that Plaintiff is limited by his impairments. (Tr. 14).  However, the ALJ ultimately concluded Plaintiff's "treating records did not indicate a complete and disabling condition." (Tr. 14).  Considering the entire record, the Court finds Plaintiff's credibility was assessed under the correct legal standard and the ALJ determination is supported by substantial evidence in the record.

### B.    Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64.  A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564.  Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Plaintiff first argues the ALJ erred by failing to consider "the functional limitations imposed on the plaintiff's ability to engage in basic work activities as a consequence of *all* of his 'severe' impairments." (R. Doc. 10 at 12). According to Plaintiff, these "severe" impairments include: "severe degenerative disc disease, severe spinal/lumbar stenosis, lumbar radiculopathy, chronic back and leg pain, severe left foot drop, hypertension, hyperlipidemia, aortic valve disorder (AS/AI) and cardiomegaly/cardiomyopathy." (R. Doc. 10 at 12). After reviewing the administrative transcript, this argument is not persuasive.

"The mere presence of some impairment is not disabling per se. Plaintiff must show that [he] was so functionally impaired by [his diagnosed conditions] that [he] was precluded from engaging in any substantial gainful activity." *Hames*, 707 F.2d at 165. In other words, it is the limitations caused by the impairments and not the diagnoses themselves that matter. Plaintiff harps on his diagnosed impairments without alleging their resulting limitations, if any, would be disabling in combination. Moreover, while only Plaintiff's spinal stenosis and left foot drop were considered severe impairments (Tr. 12), the ALJ still referenced, discussed and considered the medical evidence relevant to all of his diagnoses — severe or not. (Tr. 12-15).

Plaintiff further claims his need to alternate positions during the day is inconsistent with an RFC of sedentary work and his concentration and potential attendance issues preclude him from performing any work. Plaintiff is generally correct that a need to alternate positions does not fit within the definition of sedentary work.[5] Unfortunately, the record does not support a finding that this limitation exists. The medical evidence does not show that any treating

---

[5] *See, e.g.*, SSR 83–12, 1983 WL 31253, at *4 (Jan. 1, 1983) (a claimant may have an RFC "of either sedentary or light work except that the person must alternate periods of sitting and standing . . . . Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work ... or the prolonged standing or walking contemplated for most light work."); *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir.1994) ("Because [claimant] must alternate between sitting and standing as needed, [claimant]'s exertional capabilities do not fit within the definition of sedentary work."); *Ripley v. Chater*, 67 F.3d 552, 557 n. 25 (5th Cir.1995) ("Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work.").

physicians advised Plaintiff to alternate positions or limit his sitting, standing or walking during the day and Plaintiff does not cite to any.   Instead, Plaintiff refers the Court to his own testimony that his impairment's limited his ability to walk, stand and sit for certain periods of time. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (RFC of sedentary work supported by substantial evidence where "no physician had advised" claimant "to limit her activities in any way" and claimant's evidence was limited to her own testimony); *Harper v. Sullivan,* 887 F.2d 92, 97 (5th Cir.1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled).  Thus, the Court finds the ALJ's decision supported by substantial evidence.

Hypothetically, even if medical evidence corroborated the need to alternate positions, the Court's conclusion would not change.  The Administration advises that some jobs — "typically professional and managerial ones" — allow a person to "sit or stand with a degree of choice." SSR 83-12, 1983 WL 31253, at *4 (Jan. 1, 1983).  If a claimant "had such a job" and is capable of performing his or her past relevant work "he or she would not be found disabled." *Id.*  Plaintiff "had such a job" — he testified that his former job allowed him to freely alternate between sitting and standing throughout the day, unless he was participating in arbitration. (Tr. 30).  The Court has also found substantial evidence supports the ALJ's RFC and step four determination that Plaintiff can perform his past relevant work.  Therefore, Plaintiff's argument cannot stand.

Plaintiff also argues the ALJ erred by failing to "consider or include any mention of the hypotheticals that she proposed" to the VE or the VE's "testimony regarding such hypotheticals" in her RFC and step four findings. (R. Doc. 10 at 13).  First, Plaintiff claims the ALJ ignored the VE's testimony that, according to the Dictionary of Occupational Titles (DOT), his former job "involves a great deal of travel" (R. Doc. 10 at 12).  As such, the ALJ erroneously found Plaintiff

could perform sedentary work, including his past relevant work as a Business Representative, Labor Union because Plaintiff testified he cannot drive longer than an hour without experiencing numbness in his legs (Tr. 34). Plaintiff's argument is inconsistent with the record.

The DOT does not say Plaintiff's former job requires a "great deal travel." DICOT 187.167-018, 1991 WL 671367 (4th ed. 1991). Rather, the DOT advises the job requires "visit[ing] work sites." DICOT 187.167-018 (Tr. 39). At the hearing, the ALJ asked the VE about the amount of driving generally required by the job. (Tr. 39). The VE explained "visit[ing] work cites" indicates some "travel" but not a "specific" amount. (Tr. 39). As for Plaintiff's testimony regarding his driving limitations, the ALJ did not fully credit the alleged severity of his limitations. Again, this decision was not in error. Finally, the ALJ did consider this evidence in her decision — she "recognized that this job involves travel" (Tr. 16). And so, the ALJ's decision that Plaintiff could perform his past relevant work is supported by substantial evidence.

Next, Plaintiff claims the ALJ failed to account for his inability to withstand a high level of concentration and attend work on a regular basis. The ALJ did ask "general" questions to the VE regarding the level of concentration required to perform Plaintiff's past relevant work and how frequent absences might affect the ability to maintain full-time employment. (Tr. 39-40). The ALJ's RFC assessment does not discuss or account for these two limitations. Nonetheless, the Court is unaware of any record evidence indicating Plaintiff has either a limited ability to concentrate or an inability to attend work on a regular basis. More importantly, Plaintiff has not cited to any evidence to support these contentions or even alleged these limitations exist. It is unclear why these hypotheticals were posed by the ALJ. However, it is clear that they were "really more general" questions that did not appear to indicate Plaintiff's specific limitations.

(Tr. 38-40).  And so, the ALJ's failure to incorporate any concentration or attendance limitations into her RFC or step four findings was not erroneous.

## VI.    RECOMMENDATION

For the reasons assigned above, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on January 31, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**